1   JAMES H. THEBEAU, CA Bar No. 128845
    Deputy County Counsel
2   JEAN-RENE BASLE, CA Bar No. 134107
    County Counsel
3   385 North Arrowhead Avenue, Fourth Floor
    San Bernardino, CA  92415-0140
4   Telephone:  (909) 387-4402
    Facsimile:    (909) 387-4069
5   jthebeau@cc.sbcounty.gov

6

7   Attorneys for Defendants, San Bernardino County, San Bernardino County
    Sheriff's Department, Sheriff-Coroner Rod Hoops, Deputies B. Reece,
8   Frabasilio, (erroneously sued as FRABASHO), E. Roberts, T. Garcia, P.
    Ruiz, M. Brandt, M. Flores, Sgt. D. Atkinson, Det. M. Landavazo, and Det.
9   J. Venegas

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12

13  MARIA SIBRIAN, GEBIN. B.              )  CV09-08014 JHN(DTBx)
    SIBRIAN., W. S., a minor through      )
14  her Guardian Ad Litem MARIA           )  SAN BERNARDINO COUNTY
    SIBRIAN                               )  DEFENDANTS' NOTICE OF
15                                        )  MOTION AND MOTION FOR
                    Plaintiffs            )  SUMMARY JUDGMENT;
16                                        )  MEMORANDUM OF POINTS AND
    v.                                    )  AUTHORITIES; DECLARATIONS
17                                        )  OF GARCIA, RUIZ, DeBOER,
    SAN BERNARDINO COUNTY, by             )  REECE and BLANKENSHIP IN
18  and through the SAN BERNARDINO        )  SUPPORT THEREOF; and
    COUNTY SHERIFF'S                      )  EXHIBITS A-D
19  DEPARTMENT, SHERIFF-                  )
    CORONER ROD HOOPS, DEPUTY             )  (Filed concurrently with Separate
20  B. REECE, DEPUTY FRABASHO,            )  Statement of Uncontroverted
    CITY OF POMONA, by and through        )  Facts and Conclusions of Law;
21  the CITY OF POMONA POLICE             )  and [Proposed] Order)
    DEPARTMENT, POMONA POLICE             )
22  CHIEF DAVE KEETLE, and DOES 1         )  DATE:  January 24, 2011
    to 10 in their individual and official )  TIME:   2:00 p.m.
23  capacities,                           )  CTRM:  790, Roybal
                                          )
24                                        )
                    Defendants            )
25                                        )  Honorable Judge Jacqueline H.
                                          )  Nguyen
26                                        )

27

28

#26V4610

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES..........................4

INTRODUCTION ....................................................................4

    A.    Allegations of the Second Amended Complaint..............4

    B.    Grounds for summary judgment ....................................5

STATEMENT OF FACTS ......................................................5

    A.    Facts establishing individual defendants'

        entitlement to judgment ....................................................5

    B.    Facts establishing entitlement to judgment

        on the Monell claim......................................................13

ARGUMENT ......................................................................14

  I.  ON SUMMARY JUDGMENT PLAINTIFFS BEAR THE

     BURDEN OF ESTABLISHING EVERY ELEMENT OF

     THE CLAIM ....................................................................14

  II.  PLAINTIFFS CANNOT ESTABLISH A VIOLATION OF

     THEIR RIGHTS OR OVERCOME DEFENDANTS'

     ENTITLEMENT TO QUALIFIED IMMUNITY ..........................14

    A.    Qualified immunity protects all but the plainly

        incompetent or those who knowingly violate the law......14

i

B.   Defendants are entitled to a presumption of
immunity and probable cause ........................................ 17

C.   Plaintiffs cannot establish probable cause was lacking .. 18

D.   Plaintiffs cannot establish any other violation
of their rights ................................................................. 20

III.   PLAINTIFFS CANNOT ESTABLISH LIABILITY PURSUANT
TO <u>MONELL</u> ........................................................................ 20

CONCLUSION ................................................................................ 23

#26V4610

# TABLE OF AUTHORITIES

Cases:

Act Up!/Portland v. Bagley

988 F.2d 868, 873 (9th Cir. 1993) ...................................................... 16

Anderson v. Creighton

483 U.S. 635, 638-639, 107 S.Ct. 3034 (1987) ................................. 16

Anderson v. Liberty Lobby, Inc.

477 U.S. 242, 249-250, 252, 106 S.Ct. 2505 (1986) ........................ 14

Ashcroft v. Iqbal

129 S.Ct. 1937 (2009) ...................................................................... 21

Awabdy v. City of Adelanto

368 F.3d 1062, 1069 (9th Cir. 2004) ................................................. 17

Bell Atlantic Corp. v. Twombly

550 U.S. 544, 555, 127 S.Ct. 1955 (2007) ....................................... 21

Bryan County v. Brown

520 U.S. 397, 404, 405 117 S.Ct. 1382 (1997) .......................... 20, 21

Celotex Corp. v. Catrett

477 U.S. 317, 322-323, 106 S.Ct. 2548, 2551-2553 (1986) ............. 14

City of Los Angeles v. Heller

475 U.S. 796, 799, 106 S.Ct. 1571 (1986) ....................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR SUMMARY JUDGMENT

#26V4610

City of St. Louis v. Praprotnik

485 U.S. 112, 127, 108 S.Ct. 915 (1988) .......................................22

Davis v. Scherer

468 U.S. 183, 197, 104 S.Ct. 3012 (1984) .....................................15

Devereaux v. Abbey

263 F.3d 1070, 1076 (9th Cir. 2001) ..............................................17

Elder v. Holloway

510 U.S. 510, 515, 114 S.Ct. 1023 (1994) .....................................15

Elder v. Holloway

975 F.2d 1388, 1392 (9th Cir. 1991)

rev'd on other grounds, 114 S.Ct. 1019 (1994) ..............................15

Hernandez v. City of Pomona

46 Cal.4th 501, 513-516, 518-519 (2009) ......................................20

Hervey v. Estes

65 F.3d 784, 789 (9th Cir. 1995) ...................................................17

Hunter v. Bryant

502 U.S. 224, 228-229, 112 S.Ct. 534 (1991) ...............................16

Jeffers v. Gomez

267 F.3d 895, 909 (9th Cir. 2001) ............................................16, 19

/

#26V4610

MOTION FOR SUMMARY JUDGMENT

<u>Knox v. McGinnis</u>

998 F.2d 1405, 1409-10 (7th Cir. 1993)............................................ 15

<u>Malley v. Briggs</u>

475 U.S. 335, 341, 106 S.Ct. 1092 (1986) .................................. 16, 19

<u>Martinez v. County of Los Angeles</u>

47 Cal.App.4th 334, 349 (1996) ........................................................ 20

<u>Monell v. Dept. of Soc. Serv. of City of New York</u>

436 U.S. 658, 98 S.Ct. 2018 (1978)............................... 2, 4, 5, 20, 22

<u>Moran v. State of Wash.</u>

147 F.3d 839, 844 (9th Cir. 1998) ..................................................... 15

<u>Morley v. Walker</u>

175 F.3d 756, 760 (9th Cir. 1999) ..................................................... 17

<u>Oklahoma City v. Tuttle</u>

471 U.S. 808, 823, 105 S.Ct. 2427 (1985) .................................. 21, 22

<u>Peng v. Hu</u>

335 F.3d 970, 979-80 (9th Cir. 2003) ................................................ 16

<u>Saucier  v. Katz</u>

533 U.S. 194, 200-202, 121 S.Ct. 2151 (2001).................... 15, 16, 19

<u>Smiddy v. Varney</u>

665 F.2d 261, 266 (9th Cir. 1981) ..................................................... 17

MOTION FOR SUMMARY JUDGMENT

#26V4610

U.S. v. Harris

403 U.S. 573, 91 S.Ct. 2075, 2082 (1971) ........................................ 18

U.S. v. Soriano

361 F.3d 494, 504-505 (9th Cir. 2004) ............................................. 18

U.S. v. Williams

2010 WL 4608253 (D. Nevada, 2010) .............................................. 18


Statutes:

42 U.S.C. § 1983 ............................................................................ 4

California Government Code § 820.2 .............................................. 20

Penal Code § 496, subdivision (a) ................................................. 10


Rules:

Federal Rule of Civil Procedure, Rule 56 ........................................ 2

Local Rule 7-3 ............................................................................... 3

#26V4610

1   JAMES H. THEBEAU, CA Bar No. 128845
    Deputy County Counsel
2   JEAN-RENE BASLE, CA Bar No. 134107
    County Counsel
3   385 North Arrowhead Avenue, Fourth Floor
    San Bernardino, CA  92415-0140
4   Telephone:  (909) 387-4402
    Facsimile:    (909) 387-4069
5   jthebeau@cc.sbcounty.gov

6

7   Attorneys for Defendants, San Bernardino County, San Bernardino County
    Sheriff's Department, Sheriff-Coroner Rod Hoops, Deputies B. Reece,
8   Frabasilio, (erroneously sued as FRABASHO), E. Roberts, T. Garcia, P.
    Ruiz, M. Brandt, M. Flores, Sgt. D. Atkinson, Det. M. Landavazo, and Det.
9   J. Venegas

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12

13  MARIA SIBRIAN, GEBIN. B.                  CV09-08014 JHN(DTBx)
    SIBRIAN., W. S., a minor through
14  her Guardian Ad Litem MARIA               **SAN BERNARDINO COUNTY
    SIBRIAN                                   DEFENDANTS' NOTICE OF
15                                            MOTION AND MOTION FOR
                      Plaintiffs              SUMMARY JUDGMENT;
16                                            MEMORANDUM OF POINTS AND
                                              AUTHORITIES; DECLARATIONS
17  v.                                        OF GARCIA, RUIZ, DeBOER,
                                              REECE and BLANKENSHIP IN
18  SAN BERNARDINO COUNTY, by                 SUPPORT THEREOF; and
    and through the SAN BERNARDINO            EXHIBITS A-D**
19  COUNTY SHERIFF'S
    DEPARTMENT, SHERIFF-                      **(Filed concurrently with Separate
20  CORONER ROD HOOPS, DEPUTY                 Statement of Uncontroverted
    B. REECE, DEPUTY FRABASHO,                Facts and Conclusions of Law;
21  CITY OF POMONA, by and through            and [Proposed] Order)**
    the CITY OF POMONA POLICE
22  DEPARTMENT, POMONA POLICE                 **DATE:  January 24, 2011
    CHIEF DAVE KEETLE, and DOES 1             TIME:   2:00 p.m.
23  to 10 in their individual and official    CTRM:  790, Roybal**
    capacities,
24                                            
                      Defendants              
25                                            **Honorable Judge Jacqueline H.
                                              Nguyen**
26

27

28

#26V4610                            1

                    MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that on Monday, January 24, 2011 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 790 of the United States District Court of the Central District, Roybal Federal Building located at 255 East Temple Street, Los Angeles, California 90012, defendants SAN BERNARDINO COUNTY, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, SHERIFF-CORONER ROD HOOPS, DETECTIVE REECE, DEPUTY FRABASILIO (erroneously sued as FRABASHO), DEPUTY E. ROBERTS, DEPUTY T. GARCIA, DEPUTY P. RUIZ, DEPUTY M. BRANDT, DEPUTY M. FLORES, SGT. D. ATKINSON, DETECTIVE M. LANDAVAZO and DETECTIVE J. VENEGAS will and hereby do move for summary judgment under FRCP, Rule 56, based on the following:

1. The individual defendants are entitled to qualified immunity;

2. Plaintiffs cannot establish liability pursuant to Monell;

3. Plaintiffs cannot establish liability under state law.

This Motion is made upon this Notice, the accompanying Points and Authorities, the Separate Statement of Uncontroverted Facts and Conclusions of Law, the pleadings on file in this matter including the Second Amended Complaint, the declarations of Detective T. Garcia, Deputy P. Ruiz, Suzanne DeBoer, Detective Reece and Lt. Blankenship, Exhibits A-D, and any evidence or argument made at any hearing the Court deems appropriate to set on this Motion.

#26V4610

2

1

**COMPLIANCE WITH LOCAL RULE 7–3.**

2

3

The conference required by LR 7-3 took place by correspondence on July 13, 2010 and via telephone calls and email transmissions on December 14 through 17, 2010.

4

5

6

Dated:  December 27, 2010          JEAN-RENE BASLE

7                                  County Counsel

8

9

10                                 JAMES H. THEBEAU

11                                 Deputy County Counsel

                                    Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#26V4610

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

### A. Allegations of the Second Amended Complaint.

Plaintiffs, Maria Sibrian, Gebin Sibrian and Wendy Sibrian (a minor,) filed their Complaint in the U.S. District Court, Central District of California on November 3, 2009.  The operative Complaint is the Second Amended Complaint ("SAC") filed August 16, 2010.  The named defendants include San Bernardino County by and through San Bernardino County Sheriff's Department, Sheriff-Coroner Rod Hoops, Detective Reece, Deputy Frabasilio (erroneously sued as Frabasho), Deputy E. Roberts, Deputy T. Garcia, Deputy P. Ruiz, Deputy M. Brandt, Deputy M. Flores, Sgt. D. Atkinson, Detective M. Landavazo and Detective J. Venegas.   The City of Pomona, City of Pomona Police Department, Pomona Police Chief Dave Keetle and various individual Pomona officers are also named defendants.

Plaintiffs allege violation of the Fourth and Fourteenth Amendment under 42 U.S.C. § 1983 (SAC, ¶¶ 37-43 and 52-64), assault (SAC, ¶¶ 22-26), battery (SAC, ¶¶ 22-26), negligence (SAC, ¶¶ 27-36), intentional infliction of emotional distress and negligent infliction of emotional distress (SAC, ¶¶ 44-51).  Plaintiffs' Monell claims are conclusory and are based solely on alleged an policy or custom of excessive force.  (SAC, ¶¶ 65-82)

As a basis of all claims, plaintiffs allege that on October 17, 2008 at 12:00 a.m., San Bernardino County Sheriff's deputies and Pomona Police officers illegally entered the plaintiffs' home, located at 781 West Center Street in Pomona, California.   Plaintiffs contend the entry was made without a valid warrant.  The Sibrians claim deputies knocked in their front door, screamed, yelled, pointed their guns at the plaintiffs and broke down the rear bedroom door and frame.  (SAC, ¶ 20:13-17.)   Furthermore,

4

plaintiffs allege Maria Sibrian was dragged by her hair down the hallway in the presence of her children.  (SAC, ¶ 20:21-25.)  Plaintiffs allege Maria Sibrian was handcuffed and remained so the entire time of her detention. (SAC, ¶ 20:26-27.)  Gebin and Wendy Sibrian were forced to sit detained for over one (1) hour.  (SAC, ¶ 20:25-26.)

**B. Grounds for summary judgment.**

The individual defendants are entitled to qualified immunity and judgment on the state law claims as the entry of plaintiffs' home was made upon a warrant supported by probable cause.  There is no evidence that the warrant was in any way deliberately falsified so as to overcome the presumption of immunity and probable cause arising from issuance of the warrant.  Further, there is no evidence that the defendants in any way used force upon the defendants so as to subject them to liability under the Fourth Amendment for use of excessive force.

The public entity defendants and individuals in their official capacity are entitled to judgment as plaintiffs have not pled and cannot show a violation of <u>Monell</u> by deliberate indifference.

## STATEMENT OF FACTS

**A.    Facts establishing individual defendants' entitlement to judgment.**

On October 16, 2008, San Bernardino Sheriff's Deputy Tony Garcia was working uniformed patrol in Rancho Cucamonga.  (Declaration of Tony Garcia, ¶ 2:24:10-11.)  At approximately 9:20 a.m., Deputy Garcia approached a parked vehicle on Turquoise Avenue in the vicinity of a known drug house, and he observed two individuals near the car.  As Deputy Garcia pulled up near the vehicle, the individuals ran away from the car. (Garcia Dec., ¶ 2:24:11-13.)  The female subject seen by Garcia

1   ran into a nearby house.  (Garcia Dec., ¶ 2: 24:13.)  Deputy Garcia

2   immediately ran the license plate of the car through dispatch and

3   requested assistance from other units. (Garcia Dec., ¶ 2: 24:13-15.)

4     Deputy Patty Ruiz was also working uniformed patrol in Rancho

5   Cucamonga on the morning of October 16, 2008.  (Declaration of Patty

6   Ruiz, ¶ 2:28:9-10.)  Deputy Ruiz responded to the call aired by Deputy

7   Garcia. (Ruiz Dec., ¶ 2: 28:11-13.)

8     Deputy Garcia approached the residence that he observed the

9   female subject run into.  He spoke with the homeowner, whom he had

10  made previous contacts with on prior occasions in relation to other

11  unrelated investigations. (Garcia Dec., ¶ 3: 24:16-18.)  The homeowner at

12  the Turquoise Avenue residence allowed Deputy Garcia to enter her

13  house.  She identified the male subject that Deputy Garcia had observed

14  running as her brother, but she did not know the female subject.  (Garcia

15  Dec., ¶ 3: 24:18-20.)  Deputy Garcia conducted a search of the house and

16  found the female subject hiding behind a door in one of the rooms.  The

17  female subject identified herself by name, Suzanne DeBoer, and

18  birthdate. (Garcia Dec., ¶ 3: 24:20-23; Declaration of Suzanne DeBoer, ¶

19  3; 31:21-22.)  Suzanne DeBoer was an individual that Deputy Ruiz was

20  seeking to speak to with reference to a recent vehicle burglary

21  investigation in the area. (Ruiz Dec., ¶ 2: 28:13-15.)  DeBoer told Deputy

22  Garcia that she had run because she knew that law enforcement was

23  looking for her. (Garcia Dec., ¶ 3: 24:23-24.)

24    Deputy Ruiz arrived at the Turquoise Avenue location to assist.

25  (Garcia Dec., ¶ 4: 25:1.)  Ruiz escorted DeBoer to her patrol unit and

26  placed DeBoer in the back seat of the vehicle. (Ruiz Dec., ¶ 2: 28:15-16;

27  DeBoer Dec., ¶ 4;31:25-32:2.)  DeBoer had told Deputy Garcia that the

28

6

MOTION FOR SUMMARY JUDGMENT

vehicle she had run from was a rental car that her grandmother had rented for her to use, and she gave Deputy Garcia consent to search the vehicle. (Garcia Dec., ¶ 3: 24:24-26; DeBoer Dec., ¶ 3;31:22-24.)

Deputies Garcia and Laing searched the DeBoer vehicle. Therein, they located a woman's purse containing several credit cards and gift cards along with a California Identification Card belonging to Suzanne DeBoer. (Garcia Dec., ¶ 4: 25:2-4.) A records check was conducted for the items found by Deputy Garcia in DeBoer's car, namely the credit cards, identification cards, miscellaneous gift cards and various property. (Ruiz Dec., ¶ 3: 28:17-19.) Deputy Ruiz determined that some of the information and property found within the car belonged to victims of crime reports taken by the San Bernardino County Sheriff's Department (DR Nos. 110813091 and 110813102) and a Claremont Police Department Crime Report, Case No. 08-3522. (Ruiz Dec., ¶ 3:28:20-24.) Further, a MIO GPS device and a grey Verizon LG cell phone were recovered from DeBoer's vehicle that matched the description of property stolen from a vehicle in Claremont (Case No. 08-3522). (Ruiz Dec., ¶ 3:28:24-26; Garcia Dec., ¶ 4:25:6-9.)

Deputy Ruiz transported DeBoer to the Rancho Cucamonga Sheriff's station for further investigation. (Ruiz Dec., ¶ 4:28:27-29:1; Garcia Dec., ¶ 5:25:10-11.) Once at the Sheriff's station in Rancho Cucamonga, DeBoer was read her Miranda rights. DeBoer indicated she understood her rights and was willing to speak with Deputy Ruiz. (Ruiz Dec., ¶ 4:29:1-4.) Ms. DeBoer told Deputy Ruiz that she lived in Rancho Cucamonga at 7071 Cameo Street. (Ruiz Dec., ¶ 4:29:4-5; DeBoer Dec., ¶ 7;32:9-10.) She admitted to holding and/or purchasing stolen property from her boyfriend's friends. (Garcia Dec., ¶ 5:25:11-13; Ruiz Dec., ¶

MOTION FOR SUMMARY JUDGMENT

4:29:5-6; DeBoer Dec., ¶ 8;32:16-17.)  DeBoer also told Deputy Ruiz and Deputy Garcia that her boyfriend, Jeff Puppe, was on parole and that he associated with a ring of adult males that routinely stole property.  (Garcia Dec., ¶ 5:25:13-15; Ruiz Dec., ¶ 4:29:6-7.)

Deputy Ruiz contacted Detective Reece and informed him she had taken Ms. DeBoer into custody after several credit cards, identification cards, gift cards and personal information related to individuals other than DeBoer were located within her vehicle in the morning.  (Declaration of William Reece, ¶ 2:34:10-16.)  Some of the items recovered in DeBoer's car were the subject of various crime reports compiled by the San Bernardino County Sheriff's Department (DR Numbers 110813091 and 110813102).  Property was also recovered from DeBoer's vehicle related to a crime report taken by the Claremont Police Department (Case No. 08-3522,) specifically a MIO GPS device.   (Reece Dec., ¶ 2:34:16-21.)  Deputy Ruiz asked that Detective Reece prepare a search warrant for DeBoer's residence at 7071 Cameo Street in Rancho Cucamonga, California. (Ruiz Dec., ¶ 2:34:23-25; Reece Dec., ¶ 5:29:14-16.)

During Deputy Ruiz's conversation with DeBoer, she admitted to Deputy Ruiz that she had received stolen property with her boyfriend on the morning of the 16th of October. (Ruiz Dec., ¶ 4:29:8-10.)  She claimed to know where some of the stolen merchandise was taken and admitted to driving to a house in Pomona to drop off the stolen property. (Ruiz Dec., ¶ 4:29:7-9.)  DeBoer volunteered to take Deputy Garcia and Deputy Ruiz to the house in Pomona where she and her boyfriend had delivered stolen merchandise earlier in the day. (Garcia Dec., ¶ 5:25:15-17; Ruiz Dec., ¶ 4:29:11-13; DeBoer Dec., ¶ 8;32:17-23.)  DeBoer agreed to point out the exact location where the stolen property had been taken early in the

morning. (Garcia Dec., ¶ 5:25:14-15; Ruiz Dec., ¶ 4:29:13-14.) DeBoer told Deputy Garcia that one of the stolen items that had been delivered to the subject location earlier in the day was a tool bag containing tools. (Garcia Dec., ¶ 6:25:20-22.)

Deputies Garcia and Ruiz drove DeBoer to Pomona in an unmarked Ford Taurus with tinted windows. (Garcia Dec., ¶ 6:25:19-20; Ruiz Dec., ¶ 6:29:17-18.) DeBoer directed the deputies to a house located on West Center Street in Pomona. (Garcia Dec., ¶ 6:25:22-23; Ruiz Dec., ¶ 6:29:18-19; DeBoer Dec., ¶ 9;32:26-33:1.) As they were traveling westbound on West Center Street, the deputies observed a male Hispanic standing within a fenced area in front of a house on West Center Street. (Garcia Dec., ¶ 6:25:23-25; Ruiz Dec., ¶ 6:29:19-21.) When they drove by the male Hispanic, DeBoer stated that the male Hispanic was standing in front of the house where she had delivered stolen property to earlier in the day. (Garcia Dec., ¶ 6:25:25-27; Exhibit A, Image depicting the house identified by DeBoer and marked by Deputy Garcia; Ruiz Dec., ¶ 6:29:21-23; DeBoer Dec., ¶ 9;33:1-6.)

Deputy Garcia proceeded to drive around the corner from the house on Center Street, and he parked in a commercial parking lot to allow for the passage of time in anticipation that the male Hispanic they had observed would no longer be in front of the subject location. (Garcia Dec., ¶ 7:26:6-9; DeBoer Dec., ¶ 9:33:6-9.) The deputies waited a few minutes before driving back by the location to obtain an address for the residence located at 781 West Center Street along with a physical description of the house. (Garcia Dec., ¶ 7:26:9-11; Ruiz Dec., ¶ 6:29:24-26.) DeBoer once again pointed out the house where the stolen property had been delivered earlier in the day and confirmed the address of the house to be 781 West

1  Center Street. (DeBoer Dec., ¶ 10:33:12-14.)  There did not appear to be
2  any residence on the lot to the east of the 781 West Center Street home
3  where the deputies had observed the male Hispanic standing.  (Garcia
4  Dec., ¶ 7:26:11-13.)

5       Deputies Ruiz and Garcia once again contacted Detective Reece
6  and informed him of the additional information obtained during their
7  investigation regarding DeBoer.  They asked that the detective prepare a
8  search warrant for the residence located at 781 West Center Street in
9  Pomona.  (Garcia Dec., ¶ 8:26:14-16; Ruiz Dec., ¶ 7:30:2-4; Reece Dec.,
10  ¶ 4:35:6-11.)  Deputy Garcia told Detective Reece that an item of stolen
11  property suspected to be seized and collected from 781 West Center
12  Street was a tool bag containing tools based upon the information
13  provided by DeBoer.  (Garcia Dec., ¶ 8:26:16-18, Reece Dec., ¶ 4:35:11-
14  14.)  A tool bag containing tools was referenced in Claremont Police
15  Department DR No. 08-3522 along with the MIO GPS device that was
16  recovered from DeBoer's vehicle earlier the same day.  Specifically, the
17  Claremont Report identified a tan, canvas Ideal brand tool bag containing
18  Craftsman and Channel Lock brand tools.  (Reece Dec., ¶ 4:35:11-17.)

19       Ms. DeBoer was arrested for a violation of Penal Code section
20  496(a), possession of stolen property.  She was transported to the West
21  Valley Detention Center in Rancho Cucamonga by Deputy Basurto.
22  (Garcia Dec., ¶ 9:26:19-21; Ruiz Dec., ¶ 8:30:5-7.)

23       Detective Reece prepared a search warrant and affidavit for the
24  home located at 781 Center Street, Pomona, California, which was signed
25  and issued by Judge D. Garza on October 16, 2008.  (Reece Dec., ¶
26  5:35:21-24; Exhibit B, Search warrant and affidavit, pp. 45-49.)

27  /

28

#26V4610

MOTION FOR SUMMARY JUDGMENT

On the evening of October 16, 2008, Detectives Reece, Venegas and Landavazo and Sgt. Atkinson met with members of the Pomona Police Department's Gang Team. (Reece Dec., ¶ 6:35:25-27.) It was decided that Pomona Police Department would make entry into the house located at 781 West Center pursuant to the search warrant since they were more familiar with the area. (Reece Dec., ¶ 6:35:27-36:3.) The officers agreed that the San Bernardino Sheriff's Department would secure the perimeter. (Reece Dec., ¶ 6:36:3-4.)

Detectives Reece, Venegas and Landavazo and Sgt. Atkinson arrived on scene near the residence located at 781 West Center Street in Pomona along with the Pomona Police Department's Gang Team at about 11:30 p.m. (Reece Dec., ¶ 7:36:5-8.) San Bernardino County Sheriff's Deputies Evans, Brandt and Flores were already on scene at the location as they had been conducting surveillance of the area in anticipation of serving the search warrant. (Reece Dec., ¶ 7:36:8-11.)

The Pomona officers knocked at the door of the house located at 781 West Center Street and gave notice of their intent to serve the search warrant with no response from the occupants of the house. (Reece Dec., ¶ 8:36:12-14.) The front door was unlocked, so the police officers opened the door and entered the house while repeatedly announcing "police" and "search warrant" in both English and Spanish. Detective Reece followed behind the Pomona Police officers. (Reece Dec., ¶ 8:36:14-17.)

Detective Reece observed the Pomona Police officers attempt to open a door within the house located at 781 West Center Street, but they were having difficulty because someone or something appeared to be blocking the door. (Reece Dec., ¶ 9:36:18-20.) Reece then observed a Pomona officer struck by an object through an opening in the door, which

1   was later determined to be a machete.  (Reece Dec., ¶ 9:36:20-22.)  The
2   door was then pushed open and Reece observed the Pomona Police
3   officers bringing two individuals, later determined to be plaintiffs Maria and
4   Gebin Sibrian, out of the room. (Reece Dec., ¶ 9:36:22-24.)  Detective
5   Reece noticed that there were three individuals detained in the living room
6   of the home.   The third person was a juvenile, later determined to be
7   Wendy Sibrian.    (Reece Dec., ¶ 9:36:24-26.)
8        Detective Reece walked through the Sibrians' very small house to
9   look for indications of stolen property, specifically Craftsman and Channel
10   Lock   brand   tools   related   to   the   Claremont   Police   Department
11   investigation.  (Reece Dec., ¶ 10:36:27-37:2.)  Soon thereafter, Detective
12   Reece conferred with Sgt. Atkinson, who indicated that there was a house
13   at the rear of a lot to the immediate east of the 781 residence that might
14   be the location where the stolen property was located.  (Reece Dec., ¶
15   10:37:3-5.)  Reece immediately told the Pomona Police officers that the
16   officers might have been in the wrong house and to stand by.  (Reece
17   Dec., ¶ 10:37:5-7.)  Detective Reece told a Pomona officer that he should
18   speak with the Sibrians and explain to them that the search warrant had
19   been executed at the wrong house in Spanish.  (Reece Dec., ¶ 11:37:8-
20   10.)
21        Reece exited the Sibrian house.  (Reece Dec., ¶ 11:37:10.)  From
22   the time the officers entered the Sibrian residence to the time Detective
23   Reece left was approximately ten (10) minutes.  (Reece Dec., ¶ 12:37:13-
24   14; Exhibit C, CAD Detailed History, pp. 51-52.)  To the best of Reece's
25   recollection, neither he nor any other San Bernardino County Sheriff's
26   Department officer had any physical contact with the Sibrians. (Reece
27   Dec., ¶ 11:37:10-12.)
28

12

After leaving the Sibrian house, Detective Reece made contact with an individual identified as Ernesto Gonzalez at the neighboring home, located at 777 West Center Drive.  (Reece Dec., ¶ 13:37:19-20.)   By 11:50 p.m., Gonzalez had signed a consent form authorizing the search of his property.  (Reece Dec., ¶ 13:37:20-22.)  Gonzalez's house sits at the rear of a lot immediately east and adjacent to the 781 West Center Street address and was obscured by vegetation and various property scattered throughout the yard, including a U-Haul truck, a full size van, an old pick up truck on blocks and various hand and power tools.  (Reece Dec., ¶ 13:37:22-26.)  The Craftsman and Channel Lock brand tools and tool bag related to the Claremont Police Department investigation were located in the yard of the property at 777 West Center Street along with other stolen property.  (Reece Dec., ¶ 13:37:27-38:3.)  Gonzalez was subsequently arrested and transported to the West Valley Detention Center for booking. (Reece Dec., ¶ 13:38:3-4.)

None of the County defendants made physical contact with the plaintiffs or used force upon them.  (Garcia Dec., ¶ 10:27:1-4; Ruiz Dec., ¶ 9:30:8-11; Reece Dec., ¶ 11:37:10-12.)

**B.   Facts establishing entitlement to judgment on the <u>Monell</u> claim.**

None of the individual defendants involved in the incident have policymaking authority and the Sheriff was not involved in the incident. (Declaration of Lt. Blankenship, ¶¶ 4-13:39:27-41:10.)  Sheriff's policies prohibit use of excessive force or obtaining a warrant based on false information or upon a lack of probable cause.  (Blankenship Dec., ¶ 2:39:11-22; Exhibit D, San Bernardino County Sheriff's Department Policy §§ 1.610 (Respect for Constitutional Rights), 1.622 (Integrity), 1.632

#26V4610

(Competency), 1.628 (Truthfulness), 1.634 (Obeying the Law) and 3.604 (Use of Reasonable Force - Defined). Finally, Sheriff Rod Hoops was not the Sheriff-Coroner of the San Bernardino County Sheriff's Department on the date of the subject incident, October 16, 2008.  He did not become Sheriff until February 3, 2009 when he was appointed to complete the term of Sheriff Gary Penrod.  (Blankenship Dec., ¶ 14:41:11-14.)

## ARGUMENT

## I.

## ON SUMMARY JUDGMENT PLAINTIFFS BEAR THE BURDEN OF ESTABLISHING EVERY ELEMENT OF THE CLAIM

On summary judgment the plaintiffs bear the burden of establishing by "significantly probative" evidence every element of the claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250, 252, 106 S.Ct. 2505 (1986) (summary judgment motion implicates substantive evidentiary burden); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2551-2553 (1986) (A defendant moving for summary judgment has no duty to establish evidence negating plaintiff's claims).   For reasons set forth below, plaintiffs cannot meet their burden.

## II.

## PLAINTIFFS CANNOT ESTABLISH A VIOLATION OF THEIR RIGHTS OR OVERCOME DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY

**A.  Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.**

Qualified immunity may be overcome only by a showing that 1) a constitutional right was in fact violated, and 2) based on fact-specific,

1   analogous precedents, no reasonable officer could believe defendant's
2   actions were lawful.  Saucier v. Katz, 533 U.S. 194, 200-202, 121 S.Ct.
3   2151 (2001) (officer must be "on notice" by pre-existing law that the
4   alleged conduct is unlawful.)
5       "A plaintiff who seeks damages for violation of constitutional or
6   statutory rights may overcome the defendant official's qualified immunity
7   only by showing that those rights were clearly established."  (Emphasis
8   added.)  Davis v. Scherer, 468 U.S. 183, 197, 104 S.Ct. 3012 (1984),
9   cited with approval in Elder v. Holloway, 510 U.S. 510, 515, 114 S.Ct.
10  1023 (1994).  The court must decide qualified immunity at the earliest
11  possible moment because qualified immunity is an "entitlement" not to
12  stand trial or face the burdens of litigation.  Saucier v. Katz, supra, 533
13  U.S. at 200.  It continues to be the law in the Ninth Circuit that "the plaintiff
14  bears the burden of proving that the rights she claims were 'clearly
15  established' at the time of the alleged violation [Citations]."  Moran v. State
16  of Wash., 147 F.3d 839, 844 (9th Cir. 1998).  This means that a plaintiff
17  must show by pre-existing precedents that plaintiff's rights were clearly
18  established in a particularized sense, namely that "it would be clear to a
19  reasonable officer that his conduct was unlawful in the situation he
20  confronted."  Saucier, supra, 533 U.S. at 202.    As to qualified immunity,
21  the question is not whether the conduct is clearly constitutional, but
22  whether it is clearly unconstitutional.  Knox v. McGinnis, 998 F.2d 1405,
23  1409-10 (7th Cir. 1993).  Absent a showing that "pre-existing" law clearly
24  proscribed the actions by defendants, they are "presumed to be immune
25  from damages. . . ."  Elder v. Holloway, 975 F.2d 1388, 1392 (9th Cir.
26  1991), rev'd on other grounds, 114 S.Ct. 1019 (1994).
27      The burden to overcome qualified immunity is indeed heavy.  The
28

#26V4610

15

MOTION FOR SUMMARY JUDGMENT

Supreme Court has repeatedly stressed that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Saucier, supra, 533 U.S. at 202 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)).  It must have been "obvious" to a reasonably competent officer that the conduct was unlawful.  Id.  This deferential standard is necessary to fulfill the qualified immunity's purpose to prevent officers from erring on the side of caution because they fear being sued. Hunter v. Bryant, 502 U.S. 224, 228-229, 112 S.Ct. 534 (1991); Anderson v. Creighton, 483 U.S. 635, 638-639, 107 S.Ct. 3034 (1987).

Saucier requires that the "broad discretion" afforded police officers must be extended to mistakes as to the "facts establishing the existence of probable cause" as well as mistakes as to what the law requires in particular circumstances.   Saucier, supra, 533 U.S. at 206; Jeffers v. Gomez, 267 F.3d 895, 909 (9th Cir. 2001).  Saucier makes clear that the goals of qualified immunity cannot be served if courts "deny summary judgment any time a material issue of fact remains."  Saucier, supra, 533 U.S. at 202.

Since Hunter v. Bryant, supra, probable cause is in the first instance no longer a question for the jury in civil cases.  Peng v. Hu, 335 F.3d 970, 979-80 (9th Cir. 2003) (rejecting argument that if there is more than one reasonable inference from undisputed facts regarding existence of probable cause that the question is for the jury).  In Hunter the Supreme Court reversed the Ninth Circuit's holding that the question of whether a reasonable officer could believe in the existence of probable cause is a question for the jury.  Hunter v. Bryant, 502 U.S. at 227-228.  See also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) ("The determination of whether the facts alleged could support a reasonable

1 │ belief in the existence of probable cause or reasonable suspicion is also a

2 │ question of law to be determined by the court.")

3 │     **B.  Defendants are entitled to a presumption of immunity and**

4 │ **probable cause.**

5 │     It is well established that police officers are immunized against

6 │ claims of false arrest or unlawful search or seizure by the filing of a

7 │ criminal complaint (<u>Smiddy v. Varney</u>, 665 F.2d 261, 266 (9th Cir. 1981))

8 │ or the issuance of a warrant (<u>Morley v. Walker</u>, 175 F.3d 756, 760 (9th Cir.

9 │ 1999)).   Plaintiffs may overcome the presumption of immunity and

10 │ probable cause only by a "substantial showing of deliberate falsehood or

11 │ reckless disregard for the truth in the officer's affidavit" and that "without

12 │ the dishonestly included or omitted information, the warrant would not

13 │ have issued." <u>Id</u>. at 760.  Plaintiff must establish the materiality of the

14 │ dishonestly included or omitted information to probable cause.  <u>Hervey v.</u>

15 │ <u>Estes</u>, 65 F.3d 784, 789 (9th Cir. 1995).

16 │     Plaintiffs must also establish that defendants intended to deprive

17 │ plaintiffs of a specific constitutional right.  <u>Awabdy v. City of Adelanto</u>, 368

18 │ F.3d 1062, 1069 (9th Cir. 2004).  It is not enough to show that facts were

19 │ arguably or negligently included or omitted.  Rather, a plaintiff must show

20 │ a deliberate falsification.  <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th

21 │ Cir. 2001) (plaintiff must show evidence that defendant knew or should

22 │ have known plaintiff was innocent or used techniques that defendant

23 │ should have known would yield false information).

24 │     Plaintiffs cannot show that the warrant affidavit was in any way

25 │ deliberately or recklessly falsified or that such falsification was in any

26 │ material to probable cause, i.e. that the warrant would not have issued but

27 │ for the falsification.  In fact, the officers in this case sought the warrant

28 │

17

based on DeBoer's statements based on personal knowledge and against her own penal interest that she was involved in the delivery of stolen property to the residence at 781 West Center Street.   This information was more than sufficient information to establish probable cause.  U.S. v. Soriano, 361 F.3d 494, 504-505 (9th Cir. 2004) (suspect informant's admission against penal interest of involvement in crime is sufficient indicia of reliability for seeking warrant); U.S. v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 2082 (1971) (suspect informant's statement of involvement in crime based on personal knowledge and against penal interest is sufficient to establish probable cause); U.S. v. Williams, 2010 WL 4608253 (D. Nevada, 2010) *8 (probable cause to believe property may be found at a specific location may be based solely on an informant who had first-hand knowledge of the information and/or provides information that is an admission against penal interest).

Here, the warrant affidavit specifically mentioned property identified by DeBoer, namely a tool bag and tools, known to be stolen from a victim in Claremont.   Further, the tool bag was among several other items property stolen from the victim in Claremont that were found in DeBoer's car that morning.  DeBoer specifically identified the plaintiffs' residence as the residence where stolen property was delivered.  Whether DeBoer mistakenly identified the plaintiffs' residence rather than the residence next door where the stolen property was later located is irrelevant to the defendant officers' qualified immunity or to liability under the Fourth Amendment.

## C.  Plaintiffs cannot establish probable cause was lacking.

Again, plaintiffs must not only show deliberate falsehood in the warrant affidavit but also that without the falsehood the warrant would not

have issued. Accordingly, plaintiffs must establish by prior precedents that it would have been "obvious" to a reasonable officer that, absent the dishonestly included or omitted information, probable cause was lacking. <u>Malley v. Briggs</u>, *supra*, 475 U.S. at 341. The officers are entitled to immunity as to the "facts establishing the existence of probable cause" as well as mistakes as to what the law requires in particular circumstances. <u>Jeffers v. Gomez</u>, 267 F.3d 895, 909 (9th Cir. 2001). Any doubt about probable cause requires a finding of qualified immunity. <u>Saucier v. Katz</u>, *supra*, 533 U.S. at 202-203. Probable cause in this case is not a close question and plaintiffs' attack on the reliability of DeBoer is misplaced.

In fact, there is no issue of DeBoer's reliability given that the information she provided was based upon personal knowledge and against her own penal interest, namely that she had participated in the delivery of stolen property to the 781 West Center Street. (DeBoer Dec., ¶ 8:32:17-19.) However, beyond this, Deputy Ruiz had previously independently obtained information of DeBoer's involvement in a vehicle burglary theft ring. (Ruiz Dec., ¶ 2:28:13-15; DeBoer Dec., ¶ 7:32:10-13.) Further, stolen property was found in DeBoer's car, the very car that DeBoer stated was used to deliver stolen property. (Ruiz Dec., ¶ 3:28:17-26; Garcia Dec., ¶ 4:25:2-9.) DeBoer further independently verified the delivery of a stolen item to 781 West Center Street, namely a tool bag that was known to have been reported stolen from a victim in Claremont. (Garcia Dec., ¶ 6:25:20-23.) The tool bag was also reported stolen along with items found in DeBoer's car that morning, namely a GPS device and a cell phone. (Reece Dec., ¶ 4:35:9-20.) Thus, the probable cause was overwhelming. However, even if it was only arguable, defendants would be entitled to qualified immunity.

**D.  Plaintiffs cannot establish any other violation of their rights.**

None of the defendant officers had any physical contact with the plaintiffs.  Further, there is no evidence that the officers unnecessarily or unreasonably delayed their time in plaintiffs' home beyond the time they realized there was no stolen property to be found there.   Accordingly, defendants cannot be liable for excessive force or a violation of their rights under state law.  Moreover, defendants cannot be liable on any state law theory for actions that are justified under the Fourth Amendment. Hernandez v. City of Pomona, 46 Cal.4th 501, 513-516, 518-519 (2009) (actions justified under the Fourth Amendment or by probable cause not subject to challenge under state law); Martinez v. County of Los Angeles, 47 Cal.App.4th 334, 349 (1996) (Fourth Amendment justification precludes liability under state law and officers are immune under California Government Code § 820.2 regarding assessment of probable cause and decision to use force).

## III.

## PLAINTIFFS CANNOT ESTABLISH LIABILITY PURSUANT TO MONELL

The claims against the County, Sheriff's Department and individuals in their official capacity are governed by the elements set forth in Monell v. Dept. of Soc. Serv. of City of New York  436 U.S. 658, 98 S.Ct. 2018 (1978).   First, plaintiffs cannot establish Monell liability unless they establish an underlying violation of their constitutional rights.  City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986).  Second, in order to establish Monell liability plaintiffs must establish that their federal rights were violated as a direct result of and pursuant to a policy or custom of the County or its final policymaker's action that exhibits deliberate indifference to those rights.  Bryan County v. Brown, 520 U.S. 397, 404,

MOTION FOR SUMMARY JUDGMENT

405 117 S.Ct. 1382 (1997).  A policy is a course of action consciously chosen by a policymaker among various alternatives.  Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427 (1985).  A custom is a practice or usage so widespread that it has the force of law.  Bryan County v. Brown, 520 U.S. at 404.  The Supreme Court has repeatedly cautioned that municipal culpability and causation requirements must be applied rigorously, so as to avoid "serious federalism concerns" and a collapse into respondeat superior liability.  Id. at 405-406, 415.  Plaintiff cannot establish the culpability and causation elements for liability of the County.

First, given that the Monell claim depends on a showing of deliberate indifference, plaintiffs have failed to sufficiently plead a Monell claim.  (SAC ¶¶ 65-82.)  In an official capacity suit in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court held that a plaintiff must plead sufficient factual matter to show that defendants adopted and implemented policies at issue for a discriminatory purpose and not for neutral reasons.  In so doing the Court affirmed that a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 1949, quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  In Ashcroft, 129 S.Ct. at 1951-1952, the Court determined that Iqbal's allegations that Ashcroft and Mueller "knew of, condoned and willfully and maliciously agreed to subject" Iqbal to harsh conditions of confinement "as a matter of policy…and for no logical penological interest" were merely "bare assertions" amounting to nothing more than a "formulaic recitation of the elements" of a constitutional claim.  As such, the allegations were conclusory, not entitled to be assumed true and did

not state a claim upon which relief could be granted. Plaintiffs' "formulaic" assertion does not even have the benefit of setting forth the Monell formula correctly, which requires that violation be not merely in accordance with, but caused by and pursuant to a policy or custom that exhibits deliberate indifference.

Second, plaintiffs offer no evidence whatsoever of that a constitutional violation was committed or that it directly resulted from a custom or policy that exhibits deliberate indifference to the right violated. In fact, defendants' policies prohibit use of excessive force, falsehood or dishonesty or seizures without probable cause.

Finally, proof of a single incident involving unconstitutional conduct is insufficient to demonstrate liability unless the proof of the incident includes proof it was caused by a facially unconstitutional policy attributable to the final policymaker. Oklahoma City v. Tuttle, supra, 471 U.S. at 823-34. In the instant action, there is no pleading or evidence showing what policy is at issue or how it was established, what, if any, were the choices available to the policymaker, whether it was a single instance of a failure to enforce policy, whether the failure to enforce policy exhibited deliberate indifference to plaintiff's rights, what the causal connection was between the failure to enforce policy or whether plaintiff indeed intended to allege a Monell violation at all. City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (a departure from policy is not attributable to the public entity defendant for the purpose of imposing Monell liability).

/ / /

/ /

/

#26V4610

MOTION FOR SUMMARY JUDGMENT

1

**CONCLUSION**

2      Defendants are entitled to judgment on the entire SAC based on

3  plaintiffs' inability to show that defendants violated their rights in any

4  manner or that they acted in such a way as to overcome their entitlement

5  to qualified immunity.  Further, plaintiffs have failed to sufficiently plead or

6  show that a violation occurred as the direct result of a policy or custom

7  that exhibits deliberate indifference to plaintiffs' rights.

8

9  Dated:  December 27, 2010           JEAN-RENE BASLE
                                       County Counsel
10

11

12

13                                     JAMES H. THEBEAU
                                       Deputy County Counsel
14
                                       Attorneys for Defendants
15

16

17

18

19

20

21

22

23

24

25

26

27

28

#26V4610

MOTION FOR SUMMARY JUDGMENT

1    <u>**DECLARATION OF TONY GARCIA IN SUPPORT OF DEFENDANTS'**</u>

2    <u>**MOTION FOR SUMMARY JUDGMENT**</u>

3

4    I, Tony Garcia, do declare as follows:

5    1.    I am a Detective with the San Bernardino County Sheriff's

6    Department, and I am currently assigned at the Sheriff's Station in Apple

7    Valley, California. I have been in this position for one (1) year, and I have

8    been employed by the San Bernardino County Sheriff's Department for a

9    total of nineteen (19) years.

10   2.    On October 16, 2008, I was assigned to work day shift uniformed

11   patrol in the City of Rancho Cucamonga, California. At about 9:20 a.m.,

12   as I I approached a vehicle on Turquoise Avenue, I observed two subjects

13   run away from the vehicle. The female subject ran into a nearby house. I

14   immediately ran the license plate of the vehicle through dispatch and

15   requested assistance from other patrol units.

16   3.    I approached the residence that I observed the female subject run

17   into and spoke with the homeowner, whom I had made previous contacts

18   with on prior occasions in relation to other unrelated investigations. The

19   homeowner allowed me to enter her house. She identified the male

20   subject as her brother, but she did not seem to know the female subject. I

21   conducted a search of the residence and found the female subject hiding

22   behind a door in one of the rooms. She then identified herself as Suzanne

23   DeBoer. Ms. DeBoer told me that she ran because she knew law

24   enforcement was looking for her. She stated that the vehicle I had

25   checked was a rental car that her grandmother had rented for her to use.

26   DeBoer gave me consent to search the interior of the vehicle.

27

28

#26R6769

1

**24**

4.    Deputy Ruiz arrived at the location on Turquoise Avenue to assist. While searching DeBoer's car I located a woman's purse containing several credit cards and gift cards along with a California Identification Card belonging to Suzanne DeBoer.  The gift cards, property and other identification found in the vehicle were determined to have been associated with recent vehicle burglaries in the area. I also located a MIO GPS device and a Verizon cell phone, later determined to be related to an incident being investigated by the Claremont Police Department, reference Case No. 08-3522.

5.    DeBoer was taken to the Rancho Cucamonga Station by Deputy Ruiz for further investigation.  At the station, DeBoer told Deputy Ruiz and I that she would at times hold and/or purchase stolen property from her boyfriend's friends.  DeBoer told us that she knew her boyfriend was on parole and that he associated with a ring of adult males that routinely stole property.  DeBoer volunteered to take Deputy Ruiz and I to a house in Pomona where she and her boyfriend had delivered stolen merchandise earlier in the day.  She agreed to point out the exact location where the stolen property had been taken early in the morning.

6.    Deputy Ruiz and I drove DeBoer to Pomona in an unmarked Ford Taurus with tinted windows. As we drove to Pomona, DeBoer told me that one of the stolen items that had been delivered to the subject location earlier in the day was a tool bag containing tools.  She directed us to a house located on West Center Street. As we were driving westbound on West Center Street, I observed a male Hispanic standing within a fenced area in front of a house on West Center Street. As we drove by the male Hispanic, DeBoer stated that the male Hispanic was standing in front of the house where she had delivered stolen property to earlier in the day.

1  Attached hereto as Exhibit $\underline{A}$ is a true and correct copy of a photo that
2  accurately depicts the house that DeBoer identified and where I observed
3  the male Hispanic standing. I have marked the photo in Exhibit $\underline{A}$ with a
4  an x and a circle around the x where I observed the male Hispanic
5  standing when DeBoer identified him and the house.

6  7.    I proceeded to drive around the corner and park in a commercial
7  parking lot to allow for the passage of time in anticipation that the male
8  Hispanic we had observed would no longer be in front of the subject
9  location. We waited a few minutes and then we drove back by the house
10 and obtained an address of 781 West Center Street and a physical
11 description of the house. There did not appear to be, and I did not see,
12 any residence on the lot to the east of the 781 West Center Street home
13 where I observed the male Hispanic.

14 8.    I contacted Detective Reece once again and asked him to prepare a
15 search warrant for the residence located at 781 West Center Street in
16 Pomona. I told Detective Reece that an item of stolen property suspected
17 to be seized and collected from 781 West Center Street was a tool bag
18 containing tools based upon the information provided by DeBoer.

19 9.    Ms. DeBoer was arrested for a violation of Penal Code section
20 496(a), possession of stolen property. She was transported to the West
21 Valley Detention Center in Rancho Cucamonga by Deputy Basurto.

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

26R6789

3

DECLARATION OF GARCIA IN SUPPORT OF MSJ

**26**

10.    I did not participate in the execution of either search warrant procured by Detective Reece. I never entered the property located at 781 West Center Drive in Pomona, nor did I ever make contact with the residents of that home, now known to be the Sibrians.

I declare under penalty of perjury under the laws of the United States of America that the above statement is true and correct. Executed on this 24 day of December, 2010 at San Bernardino, California.

TONY GARCIA, Declarant

26R6769

27

## DECLARATION OF PATTY RUIZ IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Patty Ruiz, do declare as follows:

1.     I am a deputy with the San Bernardino County Sheriff's Department, and I am currently assigned at the Sheriff's Station in Rancho Cucamonga, California.  I have been in this position for seven (7) years, and I have been employed by the San Bernardino County Sheriff's Department for a total of ten (10) years.

2.     On October 16, 2008, I was assigned to work uniformed patrol in the City of Rancho Cucamonga, California from 6:00 a.m. to 4:00 p.m.  At about 9:20 a.m., I responded to a call aired by Deputy Garcia referencing an area check where individuals were observed fleeing from a parked car on Turquoise Avenue.  One of the persons mentioned was Suzanne DeBoer, who was a person I was seeking to talk to in a vehicle burglary investigation.  I escorted DeBoer to my patrol unit.  I placed DeBoer into the back seat of the vehicle.  She was not handcuffed at this point in time.

3.     At the Turquoise Avenue location, a records check was run for the property found by Deputy Garcia in DeBoer's car, namely several credit cards, identification cards, other miscellaneous gift cards and property.  I found that some of the information and property found within the car belonged to victims of crime reports taken by the San Bernardino County Sheriff's Department (DR Nos. 110813091 and 110813102) and a Claremont Police Department Crime Report, Case No. 08-3522.  Further, a MIO GPS device and a grey Verizon LG cell phone were recovered from DeBoer's vehicle that matched the description of property stolen from a vehicle in Claremont (Case No. 08-3522).

4.     I transported DeBoer to the Rancho Cucamonga Station for further

#26R6769

1

**28**

investigation.  At approximately 11:20 a.m. on October 16, 2008, I read DeBoer her Miranda Rights per my Department issued Miranda warning card.  She indicated she understood her rights and was willing to speak with me.  DeBoer told me that she lived at 7071 Cameo Street in Rancho Cucamonga, California.  She admitted she had held and/or purchased stolen property from her boyfriend's friends.  DeBoer explained that there was a ring of adult males who were associates of her boyfriend.  DeBoer admitted that she had received stolen property with her boyfriend early that morning.   She claimed to know where some of the stolen merchandise was taken and admitted to driving to a house in Pomona to drop off the stolen property.  DeBoer told Deputy Garcia and I that she would take us to the house in Pomona and point out the exact location where the stolen property had been sold early in the morning.

5.      I contacted Detective Reece with reference to this investigation, and I asked that he prepare a search warrant for DeBoer's residence, which was located at 7071 Cameo Street in Rancho Cucamonga, California.

6.      Deputy Garcia and I drove DeBoer to Pomona in an unmarked Ford Taurus with tinted windows.  She directed us to a house located on West Center Street.  As we were driving westbound on West Center Street, I observed a male Hispanic standing in front of a house on West Center Street.  As we drove by the male Hispanic, DeBoer stated that the male Hispanic was standing in front of the house where she had delivered stolen property to earlier in the day.  Deputy Garcia drove around the corner and parked in a commercial parking lot.  We waited a few minutes and then we drove back by the house.  As we drove by the house I obtained the physical address of 781 West Center Street.  I do not recall

#26R6769

2

**29**

where the address numbers were located at the residence.

7.     Deputy Garcia and I contacted Detective Reece once again and asked that he prepare a search warrant for the residence located at 781 West Center Street in Pomona.

8.     Ms. DeBoer was arrested for a violation of Penal Code section 496(a), possession of stolen property.  She was transported to the West Valley Detention Center in Rancho Cucamonga by Deputy Basurto.

9.     I did not participate in the execution of either search warrant procured by Detective Reece.  I never entered the property located at 781 West Center Drive in Pomona, nor did I ever make contact with the residents of that home, now known to be the Sibrians.

        I declare under penalty of perjury under the laws of the United States of America that the above statement is true and correct.  Executed on this 22 day of December, 2010 at San Bernardino, California.

PATTY RUIZ, Declarant

DECLARATION OF RUIZ IN SUPPORT OF MSJ

## DECLARATION OF SUZANNE DE BOER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Suzanne DeBoer, do declare as follows:

1.    I reside in San Bernardino County, California, and I am over the age of 18 years.  The information set forth herein is based upon my personal knowledge.  Should I be called upon as a witness in the instant action, I could and would competently testify that the information contained in the declaration is true and correct.

2.  On October 16, 2008 at approximately 9:20 a.m., I was sitting inside of a vehicle parked on Turquoise Avenue in Rancho Cucamonga, California. The car was rented from Dollar Rent-A-Car in Ontario, California by my grandmother, and she allowed me to use the car.  While I was in the vehicle, I saw a San Bernardino County Sheriff's Department patrol vehicle pull up behind the car I occupied.  Subsequently, I exited the rental car and proceeded to enter a residence located at 5659 Turquoise Avenue, Rancho Cucamonga, CA.

3.    A male sheriff's deputy approached the residence located at 5659 Turquoise Avenue, Rancho Cucamonga, CA and spoke with the homeowner, Michelle Garcia.  The sheriff's deputy then entered the house and found me in one of the rooms therein.  I identified myself by name and birth date.  The deputy asked whose vehicle I was sitting in, and I told him it was a rental car that my grandmother rented and was letting me use.  I gave the deputy consent to search the interior of the rental car.

4.    I was escorted from the house to a patrol vehicle by a sheriff's deputy, later identified as Deputy Ruiz.  Deputy Ruiz placed me in the back seat of her patrol car without handcuffs.  She told me that she

**31**

1  needed to speak with me regarding another investigation the deputy was
2  working on. I told Deputy Ruiz that I would cooperate.

3  5.     The male deputy, later identified as Deputy Garcia, searched the
4  rental car and located property therein that was stolen.

5  6.     Deputy Ruiz transported me to the Rancho Cucamonga Sheriff's
6  Station.  She read me my Miranda Rights.  I told Deputy Ruiz that I
7  understood my rights and was willing to speak with her. I was interviewed
8  in an interview room at the Rancho Cucamonga Sheriff's Station.

9  7.     During the interview, I told Deputy Ruiz that my address is 7071
10 Cameo Street.  I had not been to my house since October 10, 2008
11 because I was told by an acquaintance that law enforcement was looking
12 for me and wanted to speak with me referencing stolen property and
13 vehicle burglaries.

14 8.     Deputy Ruiz inquired as to what I knew about the stolen property
15 and vehicle burglaries.  I told her that I was not involved with the vehicle
16 burglaries, but that I had held and purchased stolen property from some of
17 my boyfriend's friends in the past as a favor. I told Deputy Ruiz that I had
18 received some stolen property while accompanied by my boyfriend earlier
19 the same day and that I knew where some of the stolen items were taken.
20 I told Deputy Ruiz that I had driven to a house in Pomona early in the
21 morning on October 16, 2008 along with my boyfriend to drop off stolen
22 property. I told Deputy Ruiz that I would take her to the house in Pomona
23 and point out to her where the stolen property had been delivered.

24 9.     I was placed in the back seat of an unmarked Ford Taurus with
25 tinted windows.  Deputy Garcia sat in the driver's seat of the car, and
26 Deputy Ruiz was in the passenger seat.  I directed the deputies to West
27
28

DECLARATION OF DE BOER

**32**

1   Center Street in the city of Pomona, California.   As we drove down Center

2   Street, I saw a man standing in front of the location where the stolen

3   property had been delivered.  I pointed out the man and the location to the

4   deputies, but I suggested the deputies not stop or slow down at that

5   moment because I believed the residents of that neighborhood would be

6   able to identify law enforcement – even in an unmarked car.   Deputy

7   Garcia continued driving to the corner of the block; he then turned right

8   and proceeded into a commercial parking lot behind the property I had

9   identified.  We remained parked there for a short time.

10   10.   Deputy Garcia once again drove down Center Street.  By this time,

11   the man I had previously seen standing in front of the subject location was

12   no longer outside.  I once again pointed out the house where the stolen

13   property had been delivered earlier in the day. I observed the address of

14   the house to be 781 West Center Street. I told the deputies that when the

15   stolen property was delivered, I had remained in the vehicle which was

16   parked at the curb.  The deputies were able to obtain a description of the

17   house and confirm the address – 781 West Center Street, Pomona.

18      I declare under penalty of perjury under the laws of the United

19   States of America that the above statement is true and correct.  Executed

20   on this _29_ day of June, 2010 at Rancho Cucamonga, California.

21

22

23                       Suzanne DeBoer, Declarant

24

25

26

27

28                             3

**33**

## DECLARATION OF WILLIAM REECE IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

I, William Reece, do declare as follows:

1.    I am a Detective with the San Bernardino County Sheriff's Department, and I am currently assigned at the Sheriff's Narcotic Division in San Bernardino, California.  I have been in this position for almost two (2) years, and I have been employed by the San Bernardino County Sheriff's Department for a total of thirteen (13) years.

2.    On the afternoon of October 16, 2008, I was assigned to the San Bernardino County Sheriff's Rancho Cucamonga Station as a Detective.  I was contacted by Deputy P. Ruiz with reference to an investigation she was conducting regarding receipt of stolen property and a suspect named Suzanne DeBoer.  Deputy Ruiz had taken Ms. DeBoer into custody earlier the same morning after several credit cards, identification cards, gift cards and personal information related to individuals other than DeBoer were located within her vehicle.  Some of these items were the subject of various crime reports compiled by the San Bernardino County Sheriff's Department (DR Numbers 110813091 and 110813102.) Property was also recovered from DeBoer's vehicle related to a crime report taken by the Claremont Police Department (Case No. 08-3522,) specifically a MIO GPS device.  Deputy Ruiz had received information from DeBoer confirming she was holding or had purchased stolen property from her boyfriend's friends.  Deputy Ruiz asked that I prepare a search warrant for DeBoer's residence, which was located at 7071 Cameo Street in Rancho Cucamonga, California.

3.    I prepared a search warrant and affidavit for DeBoer's home located at 7071 Cameo Street, which was signed and issued by Judge Lubetti on

1  October 16, 2008. I executed the search warrant at the residence located
2  on Cameo Street along with a sergeant, two other detectives and three
3  deputies from the San Bernardino County Sheriff's Department.  Several
4  items were collected, packaged and placed into evidence from the Cameo
5  residence.

6  4.     Later in the afternoon of October 16, 2008, I was contacted by
7  Deputies Ruiz and Garcia who requested I prepare another search
8  warrant and affidavit based upon information they had obtained from Ms.
9  DeBoer.   The deputies informed me that DeBoer told them she had
10  received stolen property with her boyfriend early in the morning on the 16th
11  of October, 2008. I was informed that De Boer had driven her boyfriend to
12  a house in Pomona where some of the stolen property was taken,
13  specifically a tan, canvas Ideal brand tool bag containing Craftsman and
14  Channel Lock brand tools.   A tool bag matching this description was
15  referenced in Claremont Police Department DR No. 08-3522 along with
16  the MIO GPS device and a grey Verizon LG cell phone that were
17  recovered from DeBoer's vehicle earlier the same day. Deputies Ruiz and
18  Garcia informed me that they had driven DeBoer to the subject house in
19  Pomona, which she had identified as the home located at 781 West
20  Center Street.

21  5.     I prepared a search warrant and affidavit for the home located at
22  781 Center Street, Pomona, California, which was signed and issued by
23  Judge D. Garza on October 16, 2008.  A true and correct copy of the
24  search warrant and affidavit is attached hereto as Exhibit B .

25  6.     On the evening of October 16, 2008, I met with members of the
26  Pomona Police Department's Gang Team along with Sgt. Atkinson and
27  Detectives Venegas and Landavazo.  It was decided that Pomona Police

28

1  Department would make entry into the house located at 781 West Center

2  pursuant to the search warrant since they were more familiar with the

3  area. Sgt. Atkinson, myself and the other detective agreed that the San

4  Bernardino Sheriff's Department would secure the perimeter.

5  7.    I arrived on scene near the residence located at 781 West Center

6  Street in Pomona at about 11:30 p.m. along with the members of the

7  Pomona Police Department, Detectives Landavazo and Venegas and

8  Sergeant Atkinson. San Bernardino County Sheriff's Deputies Evans,

9  Brandt and Flores were already on scene at the location as they had been

10  conducting surveillance of the area in anticipation of serving the search

11  warrant.

12  8.    The Pomona officers knocked at the door and gave notice of our

13  intent to serve the search warrant with no response from the occupants of

14  the house. The front door was unlocked, so the police officers opened the

15  door and entered the house while repeatedly announcing "police" and

16  "search warrant" in both English and Spanish. I followed behind the

17  Pomona Police officers.

18  9.    I observed the Pomona Police officers attempt to open a door, but

19  they were having difficulty because someone or something appeared to

20  be blocking the door. I then observed a Pomona officer struck by an

21  object through an opening in the door, which was later determined to be a

22  machete. The door was then pushed open and I observed the Pomona

23  Police officers bringing two individuals, later determined to be plaintiffs

24  Maria and Gebin Sibrian, out of the room. Later I noticed that there were

25  three individuals detained in the living room of the home. The third person

26  was a juvenile, later determined to be Wendy Sibrian.

27  10.    I walked through the very small house to look for indications of

28

#26R6769

3

DECLARATION OF REECE IN SUPPORT OF MSJ

**36**

stolen property, specifically Craftsman and Channel Lock brand tools related to the Claremont Police Department investigation.  At about this time, I conferred with Sgt. Atkinson who indicated that there was a house at the rear of a lot to the immediate east of the 781 residence that might be the location where the stolen property was located.  I immediately told the Pomona Police officers that we might be in the wrong house and to stand by.

11.    I relayed to a Pomona officer that he should speak with the Sibrians and explain to them that we had executed the search warrant at the wrong house in Spanish.  I exited the Sibrian home.   To the best of my recollection, I neither I nor any other San Bernardino County Sheriff's Department officer had any physical contact with the Sibrians.

12.    From the time we entered the residence to the time I left was approximately ten (10) minutes.  In reviewing the CAD Detailed History related to the service of the search warrant at 781 West Center Street, it confirms that the officers and I were in the Sibrian home for about ten (10) minutes.  A true and correct copy of the CAD Detailed History for the subject incident is attached hereto as Exhibit  _C_ .

13.    I then made contact with an individual identified as Ernesto Gonzalez at the neighboring home, located at 777 West Center Drive.  At 11:50 p.m., Gonzalez signed a consent form authorizing the search of his property.  The house sits at the rear of a lot immediately east and adjacent to the 781 West Center Street address and was obscured by vegetation and various property scattered throughout the yard, including a U-Haul truck, a full size van, an old pick up truck on blocks and various hand and power tools.  Gonzales signed a consent form authorizing a search of his property.   The Craftsman and Channel Lock brand tools and tool bag

1   related to the Claremont Police Department investigation were located in
2   the yard of the property at 777 West Center Street.  Other stolen property
3   was located in the yard.  Gonzalez was arrested and transported to the
4   West Valley Detention Center for booking.

5        I declare under penalty of perjury under the laws of the United
6   States of America that the above statement is true and correct.  Executed
7   on this ʻ22ʻ day of December, 2010 at San Bernardino, California.

8

9

10                                    WILLIAM REECE, Declarant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#26R6769

**38**

# DECLARATION OF LT. JAY BLANKENSHIP IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

I, Lt. Jay Blankenship, declare as follows:

1.    I am currently employed by the San Bernardino County Sheriffs Department and have been so employed for thirty (30) years.  I am a Lieutenant, and I have been assigned to the Civil Liabilities Division of the Department for the past nine (9) years.  My duties in this capacity include being familiar with the customs, policies and practices of the Sheriffs Department.

2.    Attached hereto as Exhibit D are true and correct copies of Sheriffs Policy §§ 1.610 (Respect for Constitutional Rights), 1.622 (Integrity), 1.632 (Competency), 1.628 (Truthfulness), 1.634 (Obeying the Law) and 3.604 (Use of Reasonable Force - Defined).  Sheriff's policies prohibit use of excessive force or obtaining a warrant based on false information or upon a lack of probable cause.  These policies are currently in effect and were in effect throughout 2008.  These policies are maintained in the San Bernardino County Sheriffs Manual.  Copies of the manual are maintained electronically on computers at the Sheriffs Headquarters.   Sheriffs personnel may access the manual at any Sheriffs computer terminal, and they are expected to be familiar with and abide by the policies.

3.    As a Lieutenant who has served thirty (30) years in the Sheriffs Department, I am familiar with the designated authority and functions of the executive and command staff of the Department, including the Sheriff, as well as lower rank staff.

4.    Detective T. Garcia is a Detective with the San Bernardino County Sheriffs Department.  As a Detective, Garcia does not have the authority

1  to promulgate policy, nor has he done so through the course of his
2  employment with the Sheriff's Department.

3  5.      Deputy P. Ruiz is a Deputy Sheriff with the San Bernardino County
4  Sheriff's Department. As a Deputy Sheriff, Deputy Ruiz does not have the
5  authority to promulgate policy, nor has he done so through the course of
6  his employment with the Sheriff's Department.

7  6.      Detective W. Reece is a Detective with the San Bernardino County
8  Sheriff's Department. As a Detective, Reece does not have the authority
9  to promulgate policy, nor has he done so through the course of his
10 employment with the Sheriff's Department.

11 7.      Sgt. J. Venegas is a Sergeant with the San Bernardino County
12 Sheriff's Department.   As a Sergeant, Venegas does not have the
13 authority to promulgate policy, nor has he done so through the course of
14 his employment with the Sheriff's Department.

15 8.      Detective M. Landavazo is a Detective with the San Bernardino
16 County Sheriff's Department. As a Detective, Landavazo does not have
17 the authority to promulgate policy, nor has he done so through the course
18 of his employment with the Sheriff's Department.

19 9.      Sgt. D. Atkinson is a Sergeant with the San Bernardino County
20 Sheriff's Department.   As a Sergeant, Atkinson does not have the
21 authority to promulgate policy, nor has he done so through the course of
22 his employment with the Sheriff's Department.

23 10.   Deputy M. Brandt is a Deputy Sheriff with the San Bernardino
24 County Sheriff's Department. As a Deputy Sheriff, Deputy Brandt does
25 not have the authority to promulgate policy, nor has he done so through
26 the course of his employment with the Sheriff's Department.

27 11.   Deputy S. Frabasilio is a Deputy Sheriff with the San Bernardino
28 County Sheriff's Department. As a Deputy Sheriff, Deputy Frabasilio does

26V8980

**40**

1   not have the authority to promulgate policy, nor has he done so through
2   the course of his employment with the Sheriff's Department.

3   12.   Deputy E. Roberts is a Deputy Sheriff with the San Bernardino
4   County Sheriff's Department. As a Deputy Sheriff, Deputy Roberts does
5   not have the authority to promulgate policy, nor has he done so through
6   the course of his employment with the Sheriff's Department.

7   13.   Deputy M. Flores is a Deputy Sheriff with the San Bernardino
8   County Sheriff's Department. As a Deputy Sheriff, Deputy Flores does not
9   have the authority to promulgate policy, nor has he done so through the
10  course of his employment with the Sheriff's Department.

11  14.   Sheriff Rod Hoops was not the Sheriff-Coroner of the San
12  Bernardino County Sheriff's Department on the date of the subject
13  incident, October 16, 2008. He did not become Sheriff until February 3,
14  2009 when he was appointed to complete the term of Sheriff Gary Penrod.

15      I declare under penalty of perjury that the foregoing is true and
16  correct. I have personal knowledge of the foregoing information and, if
17  called upon to testify to these matters, I could and would do so
18  competently.   Executed this _27_ day of December, 2010 in San
19  Bernardino, California, United States of America.

20
21
22                                    Lt. Jay Blankenship, Declarant
23
24
25
26
27
28

# EXHIBIT A

**42**



**43**

# EXHIBIT B

**44**

RASW08767

**STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

FILED
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
RANCHO CUCAMONGA DISTRICT

# SEARCH WARRANT AND AFFIDAVIT

### (AFFIDAVIT IN SUPPORT OF SEARCH WARRANT)

NOV 06 2008

BY _____
DEPUTY

I, William Reece, being an authorized State of California Peace Officer with the San Bernardino County Sheriff's Department, state by oath, that on the basis of the information contained within this Search Warrant Affidavit and the attached and incorporated Statement of Probable Cause, I have probable cause to believe and do believe that the property described below is lawfully seizable pursuant to California Penal Code Section 1524, as indicated below, and is now located at the location(s) set forth below. Therefore, I (the affiant) request that this Search Warrant be issued.

_____ , Night Search Requested: ☒ Yes ☐ No
(Signature of Affiant)

## (SEARCH WARRANT)

THE PEOPLE OF THE STATE OF CALIFORNIA, TO ANY SHERIFF, DEPUTY SHERIFF, CONSTABLE OR PEACE OFFICER IN THE STATE OF CALIFORNIA:

Proof, by affidavit, having been made before me this day by William Reece, a duly authorized Peace Officer for the State of California, that there is probable cause to believe that the property described herein may be found at the location(s) set forth herein and that it is lawfully seizable pursuant to California Penal Code Section 1524 as indicated below by "X"(s) in that it:

☒ was stolen or embezzled.
☐ was used as the means of committing a crime.
☐ is possessed by a person with the intent to use it as a means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery.
☐ tends to show that a crime has been committed or that a particular person has committed a crime.
☐ tends to show that sexual exploitation of a child, in violation of P.C. Section 311.3, has occurred or is occurring.

THEREFORE, YOU ARE COMMANDED TO SEARCH: (Additional locations may be listed in Attachment "A")
791 Center Street, City of Pomona, State of California
Further described as: A gray, single family residence with an elevated roofline and white trim. The roof is dark gray shingles. There is a 2 car detached garage to the rear of the property and a chain link fence around the front yard. The house to the east is brick home.

FOR THE FOLLOWING PROPERTY:
See Attachment "A"

AND SEIZE IT IF FOUND, and bring it forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to and subscribed before me this ____ day of _____, 2008 at _____ ☐ A.M. ☐ P.M.

WHEREFORE, I FIND PROBABLE CAUSE FOR THE ISSUANCE OF THIS SEARCH WARRANT AND DO ISSUE IT.

_____ , Night Search Approved: ☐ Yes ☐ No
(Signature of Magistrate)

Judge of the Superior Court, County of San Bernardino, State of California

**45**

# (ATTACHMENT "A")

**ADDITIONAL LOCATIONS TO BE SEARCHED:**

None

## ITEMS TO BE SEIZED & COLLECTED:

Tan, canvas Ideal brand tool bag containing Craftsman and Channel Lock brand tools. Related to Clairmont Police Department DR# 06-3522

## AUTHORITY TO DUPLICATE ELECTRONIC MEDIA AND/OR STORAGE DEVICES:

It is further authorized that a forensic technician or other qualified agent, sworn or non-sworn, is granted authorization to examine and make duplicate images/copies of the above mentioned electronic media and/or storage devices and to determine if evidence of the offenses enumerated in this warrant are contained therein. Evidence copies of the items relating to these offenses will be created and retained for further proceedings and made available to the authorities. Only those items recovered under the Search Warrant and relating to the offenses will be retained. The master copy will be kept in evidence storage for later discovery and trial purposes. Electronic media and/or storage devices consist of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar types of data.

## OFF-SITE SEARCH AUTHORIZATION:

For the following reasons, the execution of this warrant may take a great deal of time and require a secure facility, special equipment, and software:

1.  It is unknown what operating system is running the computer(s) or devices that are to be collected in this warrant, therefore, it will take time to determine how the operating system permits access to data stored within.
2.  The amount of data that may be stored in the hard drives and removable storage devices can be enormous, and the number or size of the hard drives and removable storage devices that will have to be searched pursuant to this warrant is not known.
3.  The data to be seized may be located anywhere on the hard drives and removable storage devices, including hidden files, program files, and "deleted" files that have not been overwritten.
4.  The data may be encrypted, or inaccessible without a password, and may be protected by self-destruct programming, all of which may take time to bypass.
5.  Because data stored on a computer can be destroyed and/or altered rather easily, either intentionally or accidentally, the search must be conducted carefully and in a secure environment.
6.  To prevent alteration of data and insure the integrity of the search, clones (master copies) of all data storage devices will be made. The clones (master copies) will then be searched and this process will take time and special equipment.

2

**46**

9

## (STATEMENT OF PROBABLE CAUSE)

**PROBABLE CAUSE**

On 10/16/08, deputies from the Rancho Cucamonga Sheriff's Station conducted a vehicle check on a vehicle parked in front of the residence at 5659 Turquoise Avenue in the city of Rancho Cucamonga, County of San Bernardino. Suzanne Deboer was sitting in the vehicle and ran from the vehicle away from deputies. Deputies caught Deboer and determined the vehicle she was sitting in was a rental, rented to her grandmother. Deboer stated her grandmother rented the vehicle for her and that she had control of the vehicle. During a consent search of the vehicle deputies located a cellular telephone that was stolen during a vehicle burglary in the city of Claremont on 10/14/08 (DR# 08-3522). Additional property taken during the Claremont burglary included a tan, canvas tool bag containing Craftsman and Channel Lock brand hand tools. Deboer was arrested for PC 496 possession of stolen property. Under Miranda Deboer stated that earlier in the day she drove her friend to 781 Center Street in Pomona California and watched her friend sell a stolen bag of hand tools to a hispanic male who lives at the location. Deboer stated she has driven friends to the Pomona address numerous times and seen them sell stolen computers and tools for cash. Deboer also stated she is "involved" as a driver in the buying, selling and holding of stolen property. I contacted the victim of the stolen tools. The victim stated he could identify his tool bag that was stolen because it was old and had unique stains and holes. He also stated he could identify the tools inside the bag.

Your Affiant requests this Search Warrant be endorsed for night time service based upon the information set forth herein and your Affiant's experience in the past that when a suspect is arrested for a felony crime he will attempt to notify co-conspirators, friends and associates immediately so that they can destroy, secrete, or dispose of stolen property and other items of evidence which can be used against him/her. It is likely that the fact of the arrest will become known quickly either as a result of the arrestee's disappearance or the arrestee's authorized telephone calls at booking. In view of these facts, it is your Affiant's opinion that this Search Warrant must be served as soon as possible, before the arrest becomes known and the items sought are destroyed, disposed of, or concealed.

**STATUTORY GROUNDS**

Based on the foregoing information, your Affiant states there is presently reasonable cause to believe that the above-listed property constitutes evidence which tends to show that a felony has been (or felonies have been) committed in the County of San Bernardino, State of California, to wit: Penal Code §496 [Possession of stolen property].

3

**47**

## (AFFIANT'S EXPERTISE)

Your Affiant, hereinafter referred to in the first person (i.e., me, myself, or I), William Reece, has been a duly authorized Deputy Sheriff for the County of San Bernardino, State of California, since 1997. I worked in the San Bernardino County Jails for 6 years and worked in Rancho Cucamonga as a patrol deputy for 5 years. I am presently assigned to the Rancho Cucamonga Sheriff's Station as a Sheriff's Detective.

I attended the San Bernardino County Sheriff's Basic Academy where I was given 22 weeks of instruction in basic investigations, crimes against persons, crimes against property, and narcotic/controlled substance identification. Additionally, I have received training in drug use, symptomatology, and recognition. I have attended monthly in-service training programs as well as special investigative classes taught and sponsored by the San Bernardino County Sheriff's Department and other P.O.S.T. certified law enforcement training agencies in subjects including vandalism, graffiti, domestic violence, child abuse, sex crimes, prostitution, human trafficking, burglary, theft, robbery, identity theft, theft by fraud, embezzlement, high tech (computer) crimes and the collection and preservation of evidence. I currently possess the Intermediate P.O.S.T Certificate.

I have investigated and made numerous arrests in cases involving narcotics, vandalism, graffiti, domestic violence, child abuse, sex crimes, prostitution, burglary, theft, robbery, identity theft, theft by fraud, embezzlement and high tech (computer) crimes.

4

**48**

### STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

# RETURN TO SEARCH WARRANT

The following property was taken from **781 Center Street, City of Pomona, State of California** and seized pursuant to California Penal Code Section 1524 by virtue of a Search Warrant dated October 16, 2008, and executed by the Honorable Judge D. Garza of the Superior Court, County of San Bernardino, State of California

**ITEMS SEIZED:**
Nothing Taken

I William Reece, a sworn peace office for the State of California, by whom this Search Warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me under this warrant.

It is further requested that for the purpose of retaining custody of this property and conducting further investigation and/or analysis of the property seized, that the court order the San Bernardino County Sheriff's Department to retain this property until it is brought before the court for hearing or other disposition, and/or that the San Bernardino County Sheriff's Department release the property to appropriate investigators, victims, and/or laboratories for further investigation and analysis without further order of this court.

(Signature of Affiant)

Peace Officer, State of California
San Bernardino County Sheriff's Department

(Signature of Magistrate)

Judge of the Superior Court, County of San Bernardino, State of California

Subscribed and sworn to before me this ___5th___ day of __November__ , __2008__

**49**

# EXHIBIT C

**50**

Police Inc# #RC082900387                                                    Page 1 of 2

**Detailed History for Police Inc# #RC082900387 As of 11/11/2009 08:06:00**

Output for: S2573

Priority:4 Type:CODE5 - SURVEILLANCE
Location:781 W CENTER ST POMONA
LocInfo:Inf:

| Created: | 10/16/2008 20:43:44 | MI111 | A8245 |
|---|---|---|---|
| Entered: | 10/16/2008 20:43:44 | MI111 | A8245 |
| Dispatch: | 10/16/2008 20:43:44 | MI111 | A8245 |
| Enroute: | 10/16/2008 20:43:44 | MI111 | A8245 |
| Onscene: | 10/16/2008 22:01:45 | EC07 | G2569 |
| Control: | 10/16/2008 22:01:48 | EC07 | G2569 |
| Transprt: | 10/17/2008 01:00:28 | EC08 | C7511 |
| Complete: | 10/17/2008 01:31:45 | EC07 | G2569 |
| Closed: | 10/17/2008 03:11:36 | EC07 | G2569 |

IC: PrimeUnit:11G6 Dispo:ARR Type:CODE5 - SURVEILLANCE
Jur:RC Group:RC(n/a) Squad Area:(n/a) RptDist:  ☐ Detail

| 20:43:44 | *CREATE | Location:781 W CENTER ST POMONA Type:CODE5 LocInfo:Inf: TypeDesc:SURVEILLANCE Priority:4 Jur:RC |
|---|---|---|
| 20:43:44 | *ENTRY | Group:None-->RC |
| 20:43:44 | *DISPER | 11G6 Location:781 W CENTER ST POMONA Operator:A8245 C4053 OperNames:ROBERTS,EVAN,RC BRANDT,MICHAEL,RC |
| 20:43:44 | -PRIU | 11G6 |
| 20:43:44 | -NPREMS | Text:(none) |
| 22:01:41 | ASSIST | 11MET7 CalSgn:11G6 Operator:B6726 OperNames:FLORES,MIGUEL,RC |
| 22:01:45 | ONSCN | 11G6 11MET7 |
| 22:01:48 | OK | 11G6 11MET7 |
| 22:01:52 | CONTCT | 11G6 11MET7 Contact:0 |
| 22:48:54 | RFT | 11MET7 Text:INQUIRY QL,6CDX258,,,,,,,,,, |
| 22:49:58 | LOGM | 11MET7 Message:020810170549002366 MessageType:Text Received:10/16/2008 22:49:42 Text:PLT |
| 23:16:20 | RFT | 11MET7 Text:INQUIRY QL,4TGA381,,,,,,,,,, |
| 23:16:30 | LOGM | 11MET7 Message:020810170616002613 MessageType:Text Received:10/16/2008 23:16:24 Text:PLT |
| 23:38:15 | BACKOS | 11D8 CalSgn:11G6 Operator:V0843 OperNames:VENEGAS,JESSE,RC |
| 23:38:15 | BACKOS | 11D1 CalSgn:11G6 Operator:L1871 OperNames:LANDAVAZO,MIKE,RC |
| 23:38:35 | OK | 11G6 11D1 11D8 11MET7 Contact:99 |
| 23:39:17 | RFT | 11D8 Text:INQUIRY PROP,FULL CHECK,0380530143,,E,,,, |
| 23:39:52 | LOGM | 11D8 Message:020810170639002767 MessageType:Text Received:10/16/2008 23:39:23 Text:TOOL |
| 23:41:29 | RFT | 11D8 Text:INQUIRY PROP,FULL CHECK,5518079,,E,,,, |
| 23:42:10 | LOGM | 11D8 Message:020810170642002804 MessageType:Text Received:10/16/2008 23:41:34 Text:TOOL |
| 23:44:08 | *RFT | 11G6 Text:INQUIRY SNS, MELCHOR,VICTOR,,M,03051961,,,,X,X,X,X,,,,,,, |
| 23:45:54 | *RFT | 11G6 Text:INQUIRY SNS,GUZMAN,MARIA,,F,10171964,,,,X,X,X,X,,,,,,, |
| 23:48:05 | *RFT | 11G6 Text:INQUIRY CDL,X,A8337955,,,,,,,,, |
| 23:49:25 | *RFT | 11G6 Text:INQUIRY SNS,SIBRIAN,MARIA,,F,01131961,,,,X,X,X,X,,,,,,, |
| 23:50:34 | *RFT | 11G6 Text:INQUIRY SNS,SIBRIAN,GEBIN,,M,08131990,,,,X,X,X,X,,,,,,, |
| 23:51:24 | *RFT | 11G6 Text:INQUIRY CDL,X,E1354377,,,,,,,,, |

**51**

| | | |
|---|---|---|
| 23:52:12 | *RFT | 11G6 Text:INQUIRY CDL,X,E1345377,,,,,,, |
| 23:53:16 | *RFT | 11G6 Text:INQUIRY SNS,GONZALEZ,ERNESTO,,M,01061976,,,,X,X,X,X,,,,,,, |
| [10/17/2008] | | |
| 00:01:53 | RFT | 11D8 Text:INQUIRY REG-US,AZ,AB18258,2008,PC,,,,, |
| 00:02:14 | LOGM | 11D8 Message:020810170702002961 MessageType:Text Received:10/17/2008 00:01:56 Text:AZ PLT |
| 00:22:54 | MISC | 11MET7 Text:HAVE LASO DO CTC AT 25927 MARKET PLACE FOR SCOCCHIO, ANTHONY 092155, SEE IF HE HAS BEEN VICT OF 459, STOLEN PROP, ETC |
| 00:25:01 | MISC | 11MET7 Text:SHOULD BE LOMITA CITY |
| 00:25:31 | CHGLOC | 11D8 Location:4034 LAS CASAS, CLAREMENT Text:FOR VICT ID OF STOLEN PROP |
| 00:27:12 | MISC | 11MET7 Text:LOMITA SHERIFF 310 539 1661 WILL ATT CTC |
| 00:45:04 | MISC | 11D8 Text:POSITIVE ID |
| 01:00:28 | TRANSP | 11MET7 Location:West Valley Detention Center |
| 01:01:04 | ASSIST | 11MET5 CalSgn:11MET7 Location:West Valley Detention Center Operator:B5126 OperNames:FRABASILIO,SHANNON,RC |
| 01:18:06 | CONTCT | 11G6 11D1 11D8 11MET5 11MET7 Contact:0 |
| 01:31:45 | CMPLT | 11MET7 |
| 01:31:47 | ONSCN | 11MET5 |
| 01:31:51 | OK | 11G6 11D1 11D8 11MET5 11MET7 |
| 01:31:54 | CONTCT | 11G6 11D1 11D8 11MET5 11MET7 Contact:0 |
| 01:41:34 | SCDOFF | 11D1 |
| 01:41:37 | CLEAR | 11D1 |
| 02:10:37 | CLEAR | 11MET7 Dispo:ARR DispoLevel:0 |
| 02:10:42 | CLEAR | 11MET5 |
| 03:11:08 | PRMPT | 11G6 |
| 03:11:36 | CLEAR | 11D8 |
| 03:11:36 | -CLEAR | |
| 03:11:36 | CLOSE | |
| 03:11:40 | CV | |

**52**

# EXHIBIT D

**53**

VOL

Sheriff's Department Manual - Policy

1

Section 1.610

Respect For Constitutional Rights

No person has a constitutional right to violate the law; neither may any person be deprived of his constitutional rights merely because he is suspected of having committed a crime. The task of determining the constitutionality of a statute lies with an appellate court of proper jurisdiction, not with an officer who seeks to properly enforce the law as it exists. Therefore, an officer may enforce any federal, state, or local statute which is valid on its face without fear of abrogating the constitutional rights of the person violating that statute. An officer who lawfully acts within the scope of his authority, make reasonable inquiries, conduct investigations, and arrest on probable cause. However, when an officer exceeds his authority by unreasonable conduct, he violates the sanctity of the law which he is sworn to uphold.

Sheriff's Department Manual - Policy



Section 1.622

Integrity

The public demands that the integrity of its law enforcement employees be above reproach. The dishonesty of a single employee may impair public confidence and cast suspicion upon the entire Department. Succumbing to even minor temptation can be the genesis of a malignancy which may ultimately destroy an individual s effectiveness and may contribute to the corruption of countless others.

An employee must scrupulously avoid any conduct which might compromise the integrity of himself, his fellow employees, or the Department.

Sheriff's Department Manual - Policy

VOL

1



Section 1.632

Competency

All members of the Department shall maintain sufficient competency to properly perform their assigned duties and assume the responsibilities of their positions.

Incompetence is defined as being incapable of the satisfactory performance of a member s assigned duties.  Significant deficiency in any of the following qualities is evidence of incompetency:

- Courage.
- Honesty.
- Emotional stability.
- Sound judgment.
- Industry.
- Alertness.
- Decisiveness.
- Power to observe.
- Initiative.
- Energy.
- Intelligence.
- The ability to get along with people.

Incompetency may be just cause for dismissal.

Sheriff's Department Manual - Policy



Section 1.628

Truthfulness

No member shall willfully depart from the truth, orally or in writing, when giving testimony in a court of law, when preparing criminal or administrative reports/documents, or in any matter under investigation by the Department or any other law enforcement agency.

Exceptions to this rule include:

- Communications/interactions during authorized undercover investigations, and
- Communications/interactions during suspect interviews as allowed by current statutory and/or case law.

Sheriff's Department Manual - Policy

VOL

1



Section 1.634

Obeying the Law

Members, while on or off duty, shall respect and obey all federal, state, and local laws and ordinances as well as the provisions of the Department Manual.

Sheriff's Department Manual - Regulations and Procedures

VOL

3

Section 3.604

Use of Reasonable Force - Defined

Deputies shall use only that amount of force that reasonably appears necessary, given the facts and circumstances perceived by the deputy at the time of the event, to accomplish a legitimate law enforcement purpose.

The "reasonableness" of the force used must be judged from the perspective of a reasonable deputy on the scene at the time of the incident. Any interpretation of "reasonableness" must allow for the fact that deputies are often forced to make split-second decisions about the amount of force that is necessary in circumstances that are tense, uncertain and rapidly evolving.

California Penal Code § 835(a) states:

- Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance.
- A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance.

**59**